# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON RUFFIN,<br><br>    Petitioner,<br><br>    v.<br><br>J. CASTELLO, Warden,<br><br>    Respondent. | Case No.: 1:18-cv-00912-JLT (HC)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE CASE<br><br>ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY |

The petitioner was convicted of attempted murder, assault with a deadly weapon, assault with great bodily injury, second degree robbery and misdemeanor delaying a peace officer. Because his petition for writ of habeas corpus fails to raise a meritorious claim challenging his conviction, the Court DENIES the petition.

## I. PROCEDURAL HISTORY

A jury convicted Petitioner of attempted murder, assault with a deadly weapon, assault with great bodily injury, second degree robbery and misdemeanor delaying a peace officer. People v. Ruffin, No. F069406, 2017 WL 527486, at *1 (Cal. Ct. App. Feb. 8, 2017). The jury found true that Petitioner personally inflicted great bodily injury, and that Petitioner personally used a deadly or dangerous weapon (a knife). (Id.) The trial court sentenced him to an aggregated prison term of 13 years. (Id.)

1

The Fifth District Court of Appeal conditionally reversed the judgment and remanded the matter to the trial court with directions to conduct a Marsden[1] hearing limited to addressing Petitioner's concerns regarding the DNA results. (Id. at *10.) On remand, on August 31, 2017, the trial court denied Petitioner's motion to appoint substitute counsel. (Doc. 36-14.) The trial court also reinstated the judgment. (Id.)

Petitioner filed the instant federal habeas petition, on July 5, 2018, raising two instructional error claims. (Doc. 1.) The Court conducted a preliminary review of the petition and directed Respondent to file a response to the petition. (Doc. 5.) The next day, Petitioner filed a state habeas petition in the Fifth District Court of Appeal alleging ineffective assistance of counsel. (Doc. 36-15.)

Petitioner then filed a motion to amend this action to add additional claims of ineffective assistance of counsel. (Doc. 11.) He lodged an amended petition setting forth those grounds. (Doc. 12.) The Court struck the lodged amended petition because it failed to set forth all grounds for relief. (Doc. 13.) The Court granted Petitioner leave to file a first amended petition that set forth all grounds for relief. (Id.) In the meantime, the Court suspended the briefing schedule. (Id.)

Soon thereafter, the Fifth District Court of Appeal denied Petitioner's state habeas petition without prejudice. (Doc. 36-16.) Undettered, Petitioner filed a second state habeas petition in the Fifth District Court of Appeal. (Doc. 36-17.)

Petitioner then filed a first amended federal habeas petition which set forth a claim of trial court error that allegedly occurred during a Marsden hearing, and a claim of ineffective assistance of counsel for failure to present favorable lab evidence to the jury. (Doc. 17.) Petitioner stated that the two claims were unexhausted, and he moved for a stay and abeyance of the proceedings pending exhaustion of those two claims. (Doc. 16.) The Court granted the stay of the proceedings and directed Petitioner to file a motion to lift the stay once exhaustion was complete (Doc. 19.).

On October 23, 2018, Petitioner filed a motion entitled "Request to Lift the Stay and Abeyance." (Doc. 20.) He stated: "Lift the stay. I had a direct appeal for my case. The California Supreme Court denied the Petition of Review that my appellate attorney. . . . There is [sic] no state

---

[1] People v. Marsden, 2 Cal. 3d 118 (1970).

2

remedies to be exhausted." (Doc. 20 at 2.) The Court construed this statement to mean Petitioner had completed exhaustion of his additional claims. The Court granted Petitioner's motion to lift the stay and directed Petitioner to file a second amended federal habeas petition setting forth all exhausted grounds for relief. (Doc. 21.)

Nevertheless, within a week, Petitioner filed a third state habeas petition in the Fifth District Court of Appeal (Doc. 36-19) and two weeks later, filed a second amended federal habeas petition in this Court. (Doc. 22.) Once again, the Court directed Respondent to file a response. (Doc. 23.)

Instead, Respondent moved to vacate the order directing Respondent to file a response. (Doc. 24.) Respondent noted that Petitioner had not exhausted his state remedies with respect to the claims he raised in the second amended petition. (Id.) Respondent also noted that the two claims raised in the second amended petition were currently being considered in the state habeas courts. (Id.)

The Fifth District Court of Appeal denied Petitioner's second state habeas petition without prejudice. (Doc. 36-18.) Petitioner also filed a request in the California Supreme Court to withdraw his state habeas petition (Doc. 36-22), which the court granted. (Doc. 36-23.)

This Court vacated the order directing Respondent to file a response to the second amended habeas petition on January 22, 2019. (Doc. 27.) The Court directed Petitioner to advise the Court whether he chose to proceed with the unexhausted claim or if he would rather have the proceedings stayed pending exhaustion of the two claims in the state courts. (Id.) Petitioner filed a notice stating that he "choose[s] to proceed only with the exhausted claim." (Doc. 33.)[2]

## II. FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth District Court of Appeal's unpublished decision[3]:

> Appellant did not present any trial evidence. Below is a relevant summary of the prosecution's case.
>
> **A. The victim**.

---

[2] A week later, the Fifth District Court of Appeal denied Petitioner's third state habeas petition. (Doc. 36-20.)
[3] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will rely on the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

3

In the early morning hours of September 4, 2013, Bryan Ponsen was found unconscious on the sidewalk next to the federal courthouse in Bakersfield, California. He had been beaten. He was transported to a local medical center with head trauma, blood coming out of his mouth, and three puncture wounds. The three puncture wounds were bleeding and located on his upper back near the shoulder blades. Two of the punctures were two inches deep and the other was three inches deep. Some of the puncture wounds had extended into a lung, collapsing it. He had some undefined injury to his right knuckles. He had a significant amount of bleeding in his brain. He was placed on life support.

Neither medical personnel nor law enforcement found a knife with Ponsen. Police reviewed video footage from the courthouse and a nearby restaurant. A female, later identified as Tashina Hughey, appeared in both videos. Police believed she might frequent that area, and they searched for her. On the same morning as Ponsen's attack, police located Hughey and brought her in for questioning.

**B. Hughey's statements to police**.
An interviewing detective observed a small cut above Hughey's hairline. Prior to the incident at the federal courthouse, she said she had an altercation with Ponsen near a taco stand. He had propositioned her for sex and had taken items from her. She claimed he injured her on her forehead. After the altercation with Ponsen, Hughey made contact with Wilbert Robinson and appellant. She described Robinson as her boyfriend and fiancé. She described appellant as "her protector." The three of them encountered Ponsen at the courthouse. Robinson did the initial confrontation. Appellant and Robinson yelled they were going to "Whoop his" and then they started fighting. She said appellant joined the fight after Robinson slipped. She took two of Ponsen's bags.

Without confirming it was a knife, Hughey believed Ponsen had held something in his hand during the fight. She thought Robinson had held a knife. Robinson was hitting and kicking Ponsen. At the beginning of the interview, she said Robinson had stabbed Ponsen. At some point during the interview, she said she did not want "to put a case on" her boyfriend. At another point she said she did not "want to put a case on her friends." Towards the end of the interview, she said it was appellant who did the stabbing. After the incident ended, she claimed appellant told Robinson that Robinson "should not have slit [Ponsen's] throat."

**C. Appellant and Robinson are arrested**.
Law enforcement located and arrested Robinson later on the same day of the assault. He had a "utility knife" in his possession, which was seized. The blade was about three inches long and almost an inch wide. Approximately the next day, police took photographs of Robinson's legs and bare torso, which were shown to the jury. Other than a "rash or abrasion" on the "inner elbow portion" of his right arm, he did not appear to have any injuries.

Appellant was located the day after the attack. He was arrested after giving a false name to police. An officer found and seized a knife inside a sheath which was

4

attached to appellant's belt. Black gloves were found in his pocket. In the video from the nearby restaurant, it appeared that appellant may have been wearing gloves on his hands immediately after Ponsen's assault. A stain was seen on appellant's pants and shirt. Subsequent testing showed it was human blood. Although law enforcement requested DNA analysis in this case, no DNA results were introduced into evidence. Appellant was photographed while he wore only boxer shorts. He did not appear to have any cuts or abrasions.

**D. Hughey's trial testimony**.
Hughey testified at trial pursuant to a plea agreement. She pled to an unspecified felony conviction, which she understood was a strike offense, and she received "substantially less time" than she was originally facing as a codefendant in the present matter. She admitted she was convicted of an unspecified felony offense almost a year prior to her trial testimony.

Hughey told the jury that Ponsen attacked her on a street early in the morning of September 4, 2013. He tried to drag her to a dark secluded alley. She ran away but he pursued her. He punched her and she fought back, but he stabbed her in the forehead with an unknown object. She suffered a gash. He took her "tablet" and smart phone before running away.

After the attack, Hughey found appellant and Robinson. She told the jury that Robinson was her fiancé and appellant was a friend. She told the two men what had happened with Ponsen. She claimed blood was coming down her face. The two men were mad because she had been attacked. Robinson ran in one direction and appellant ran in another direction. The three met each other again and appellant reported that he had just talked to somebody who he believed "might be the person." With appellant leading the way, they ran to that person's location.

The three found Ponsen near the federal courthouse. Hughey told the jury she saw all three men with knives. Robinson approached Ponsen, asking about Hughey's belongings and what had happened. Ponsen yelled that he did not do anything, and he swung at Robinson. Ponsen had "something" in his hand and he cut Robinson. They fought. Hughey confirmed that Robinson had his knife out, which he usually carried in the pocket of his pants, but she claimed Robinson never did anything with it. Appellant joined the fight after Robinson was cut. Hughey said it was appellant who stabbed Ponsen when appellant was dragging him to the ground. She described appellant's knife as a long dagger. Hughey saw both appellant and Robinson "stomping" Ponsen. She said Robinson stomped Ponsen after appellant "got him to the ground" and was stabbing him. While the fighting was occurring, Hughey took a bag belonging to Ponsen to get her "stuff" back. She denied telling appellant or Robinson that she was going to take Ponsen's property. She found her things in the bag, which also contained some of Ponsen's possessions. After the altercation, she gave the bag to Robinson. She denied that appellant ever possessed Ponsen's bag.

**E. The courthouse video**.

The video from the federal courthouse appears without sound, and it captured only a portion of the crime because the camera in question was set to pan and rotate. The date and time stamp indicated on the camera's image were accurate. The courthouse video was played for the jury.

In the video, Ponsen first appears next to the courthouse at approximately 12:43:55 a.m. He stops, stands on the sidewalk, and occasionally goes through his pockets and bags. At about 12:53:04 a.m., the video shows a man facing Ponsen and apparently speaking with him. When the camera pans back at 12:53:35, this man is gone. About two minutes later, at around 12:55:38 a.m., two men and a woman approach and confront Ponsen. At trial, Hughey confirmed she was the woman appearing in the video, and Robinson first walked up to Ponsen. Appellant stands nearby. Appellant appears to be the same man who approached Ponsen two minutes earlier.

At 12:55:41 a.m., Robinson appears to reach for something in or near his right hip as he faces Ponsen. One second later, as the camera pans away, Robinson is seen moving towards Ponsen while Hughey and appellant stand nearby watching. When the camera returns to this area at 12:56:04 a.m., appellant is grappling with Ponsen, and appellant appears to be striking Ponsen from behind while Robinson is watching. Based on the poor quality of the video, it is impossible to see if appellant has anything in his hands.

At 12:56:06 a.m., appellant pulls and throws Ponsen onto the sidewalk. Ponsen does not appear to be resisting. As Ponsen falls to the ground, Robinson is seen walking towards him. At 12:56:08 a.m., both Robinson and appellant are on top of Ponsen. Robinson appears to strike and kick Ponsen, who does not appear to be resisting. Based on the camera angle, it is impossible to see appellant's specific actions. While this is happening, Hughey walks to Ponsen's belongings. She picks up a bag and walks away.

At 12:56:34 a.m., Ponsen is lying motionless on the sidewalk. Appellant is standing a few feet away while Robinson is stomping his left foot onto Ponsen's head. At 12:56:37 a.m., the two men walk away from Ponsen, who lies motionless.

People v. Ruffin, 2017 WL 527486, at *1-3.

### III. DISCUSSION

    A.     Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States

Constitution. The challenged conviction arises out of the Kern County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.       Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520 (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C. Review of Petition

Petitioner raises the following claims for relief in the instant petition: (1) insufficiency of evidence; (2) inadequate hearing under People v. Marsden, 2 Cal. 3d 118 (1970); and (3) ineffective assistance of counsel.

1. Insufficient Evidence

Petitioner alleges that he "was deprived of his sixth and fourteenth amendment rights to due process, a fair trial and right to new counsel when trial counsel refused[d] to present DNA evidence favorable to his defense." (Doc. 22 at 5.) However, Petitioner failed to raise this claim to the Fifth District Court of Appeal and to the California Supreme Court. This claim is unexhausted and subject

to dismissal. Nevertheless, the Court will address the claim since it is not colorable and therefore may be denied. 28 U.S.C. § 2254(b)(2); Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005).

   a. *Legal Standard*

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307 (1979), the test on habeas review to determine whether a factual finding is fairly supported by the record is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In applying the AEDPA's deferential standard of review, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986).

In Cavazos v. Smith, 565 U.S. 1 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson

> makes clear that it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

Because rational people can sometimes disagree, the inevitable consequence of this

settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Id. at 2.

b. *Analysis*

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. There was substantial evidence for the crimes, including Tashina Hughey's statements to police, her trial testimony and the video of the attack.

Petitioner fails to explain how trial counsel's refusal to present DNA evidence would have impacted the jury's determination. Petitioner fails to show that no rational trier of fact would have agreed with the jury's determination. The claim is conclusory and must be denied. Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.1995) (Conclusory allegations of unconstitutionality are insufficient to state a cognizable claim).

2. Inadequate hearing under *Marsden*

Petitioner contends that the trial court conducted an inadequate Marsden hearing regarding his complaint that his trial counsel failed to present favorable DNA evidence.

a. *Legal Standard*

The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and therefore is properly considered in a habeas proceeding. Bland v. California Dep't of Corrections, 20 F.3d 1469, 1475 (9th Cir. 1994), *cert. denied*, 513 U.S. 947, 115 S. Ct. 357, 130 L. Ed. 2d 311 (1994), *overruled on other grounds by* Schell v. Witek, 218 F.3d 1017 (9th Cir.2000). It is well settled that when a criminal defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction. See id. at 1475-76; United States v. Robinson, 913 F.2d 712, 716 (9th Cir.1990). The Sixth Amendment, however, guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his counsel. See Morris v. Slappy, 461 U.S. 1, 14, 103 S.Ct. 1610, 75 L. Ed. 2d 610 (1983). The ultimate inquiry in a federal habeas proceeding is whether the petitioner's Sixth Amendment right to counsel was violated. Schell v. Witek, 218 F.3d 1017, 1024-25 (9th Cir.2000) (*en*

*banc*). The habeas court considers whether the trial court's denial of or failure to rule on the motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." Id. at 1026.

    b. *Analysis*

Petitioner contends that the trial court conducted an inadequate Marsden hearing. The Fifth District Court of Appeal issued the last reasoned decision on this claim. People v. Ruffin, 2017 WL 527486, at *8-10. The Petitioner's claim with respect to the Marsden hearing is moot, as the Fifth District Court of Appeal granted Petitioner relief on this claim by conditionally reversing the judgment and ordering the trial court to conduct another Marsden hearing on remand. See, e.g., James v. Adams, No. 1:07CV01110-JMDHC, 2009 WL 2905724, at *10 (E.D. Cal. Sept. 4, 2009). The trial court conducted a hearing and determined that Petitioner was not entitled to substitute counsel. (See Doc. 36-14.) Accordingly, Petitioner is not entitled to relief on this claim.

    3.      Ineffective Assistance of Counsel

    a. *Legal Standard*

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have

11

1 prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

b. *Analysis*

Petitioner complains that defense counsel should have presented the results of DNA testing at trial. However, based on the record, the choices made by counsel appear reasonable. The video and other trial evidence demonstrated that Petitioner beat and kicked the victim and he has failed to demonstrate that there is a reasonable probability that such evidence if introduced would undermine confidence in the outcome of the trial. Petitioner failed to show that counsel erred or that the error resulted in any prejudice. The claim should be rejected.

**IV.   CERTIFICATE OF APPEALABILITY**

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003). The controlling statute in determining whether to issue a

certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a)  In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b)  There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Thus, the Court DECLINES to issue a certificate of appealability.

**V.    ORDER**

Accordingly, the Court ORDERS:

1. The petition for writ of habeas corpus is DENIED with prejudice;
2. The Clerk of Court is DIRECTED to enter judgment and close the case; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated: **July 11, 2019**              **/s/ Jennifer L. Thurston**
                                      UNITED STATES MAGISTRATE JUDGE